# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ASHLEY JOHNSON (formerly Gammon), )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>HEALTH CARE SERVICE )<br>COPORATION, a Mutual Legal )<br>Reserve Company, d/b/a BLUE CROSS )<br>AND BLUE SHIELD OF OKLAHOMA )<br>)<br>Defendant. ) | NO. CIV-16-1271-HE |

## ORDER

Plaintiff Ashley Johnson sued Health Care Service Corporation, d/b/a Blue Cross and Blue Shield of Oklahoma ("HCSC") in state court seeking to recover insurance benefits for medical treatment she received following an automobile accident. In her complaint,[1] plaintiff asserts breach of contract and bad faith claims. HCSC removed the action, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, and both parties have moved for judgment on the basis of the Administrative Record.[2]

### Background

---

[1] Because the action was filed in state court, the initial pleading was a petition rather than a complaint. The court will refer to it as a complaint.

[2] References to the Administrative Record will be to "AR" followed by the page number. Page references to briefs are to the CM/ECF document and page number.

On January 12, 2012, plaintiff was involved in an automobile accident and incurred medical expenses as a result of her injuries. At the time, plaintiff worked for Edwin Fair Community Mental Health Center ("Edwin Center") and was a participant in a BlueChoice employee benefit plan, which Edwin Center had established to provide health benefits for its employees. Edwin Center is the benefit plan's administrator and HSCE is its insurer and claims administrator. The benefit plan defines Blue Cross and Blue Shield of Oklahoma as the "Plan," AR 0019, and refers to it as the "Plan" throughout the document. *See, e.g.*, AR 0098 ("In determining whether services or supplies are Covered Services, the Plan will determine . . . ."); AR 0104 ("Once the Plan receives a Properly Filed Claim from you or your Provider . . . .").[3]

Plaintiff alleges in her complaint and brief that she "provided her medical providers with her health insurance information, and requested that said medical providers file her medical bills with her health insurance for payment."[4] Doc. Nos. 1, p. 2, ¶6; 14, p. 3, ¶ 3. She also alleges that she asked her medical providers not to "wait[] for a potential settlement from the personal injury claim filed with the liability automobile insurance, Progressive Insurance." *Id*.

The benefit plan requires a participant to furnish a "Properly Filed Claim" to HSCS within 90 days after the end of the calendar year during which the services were rendered.

---

[3] To distinguish between the health benefit plan and defendant, the court will refer to the "benefit plan" and to "defendant" or "HCSC." It will not refer to the "Plan" except when quoting from the benefit plan itself.

[4] These allegations are not supported by the AR.

AR 0096. A "Properly Filed Claim" is defined by the benefit plan as "a formal statement or claim regarding a loss which provides sufficient, substantiating information to allow the Plan to determine its liability for Covered Services." AR 0020. It "includes: a completed claim form; the Provider's itemized statement of services rendered and related charges; and medical records, when required by the Plan." *Id.* Unless the participant furnishes HSCS with proper notice that he or she has received "Covered Services," the benefit plan provides that HCSC "will not be liable" for payment of any benefits.[5] AR 0096. If, however, a participant shows that "the claim was given as soon as reasonably possible," the benefit plan provides that payment will not be reduced by the participant's failure to provide a "Properly Filed Claim to the Plan" within the specified time. *Id.* The benefit plan also imposes a three year limitations period for a participant to take legal action to recover benefits, which runs from the date a "Properly Filed Claim" must be submitted to HCSC.[6] AR 0030, 0096.

The Record indicates that in January/early February 2012, HCSC paid a claim for medical services plaintiff received on January 15, 2012, at Mercy After Hours, a medical

---

[5] *The benefit plan states that "Participating Provider[s] have agreed to submit claims directly to the Plan" for participants." AR 0103. It also states that a participant ordinarily will have to pay a bill for services rendered by a physician or other provider who does not have an agreement with defendant and then file a claim with defendant and be reimbursed. Id. In that situation, the participant is to provide defendant with written notice that "Covered Services have been rendered," and it will "furnish claim forms to [the participant] for submitting a Properly Filed Claim." AR 0096.*

[6] *The Tenth Circuit has concluded that reasonable ERISA-plan limitations periods are enforceable.* Salisbury v. Hartford Life and Acc. Co., *583 F.3d 1245, 1247-48 (10th Cir. 2009).*

3

clinic. On February 1, 2012, HCSC sent plaintiff an Explanations of Benefit ("EOB") informing her of the action taken on the claim. AR 0207 – 0211. HCSC subsequently paid three more claims for medical treatment plaintiff received from Dr. Robert Tibbs at Neuroscience Specialists on April 25, 2012, August 10, 2012 and September 5, 2012. AR 0212-AR 0223.[7] HCSC again sent plaintiff EOBs, explaining its claims decisions. *Id*.

According to the Record, HSCS did not receive any more claims from plaintiff's medical providers until August 2013. Beginning in August through September 2013,[8] multiple providers sent HSCA claims for services plaintiff had been rendered in January 2012 (Spinal Wellness Clinic, INTEGRIS Southwest Medical Center and Emergency Medical Services) and May through September 2012 (Northern Therapy and Rehabilitation). HSCS stated in the EOBs it sent plaintiff that it denied them all because the charges were submitted after the claim filing deadline set out in plaintiff's health care plan. *See, e.g.*, AR 0203. Under the terms of the benefit plan, because the services were rendered between January 2012 and September 2012, plaintiff had to submit her claims for benefits within 90 days of December 31, 2012, or by March 31, 2013, and file an action to recover any benefits due no later than March 31, 2016.

---

[7] *In her motion for judgment, plaintiff includes the claims defendant asserts it paid, as being among those denied. The evidence in the Record which plaintiff cites does not, though, controvert defendant's evidence demonstrating that it paid the claims in accordance with the terms of the benefit plan. Compare AR 0207, cited by defendant, with AR 0291, cited by plaintiff, and AR 0212-0223, cited by defendant, with AR 0164 and 0351, cited by plaintiff.*

[8] *Defendant states that it received a claim for benefits from Emergency Medical Services in October 2013. Doc. #16, p. 10, ¶15. However the page cited, AR 0203 reflects that the EOB regarding that claim was sent in September 2013. However, the distinction, is immaterial.*

Although the EOBs informed plaintiff of her appeal rights under the benefit plan, she did not challenge any of defendant's claim denials. Instead, plaintiff's attorney sent defendant a letter dated February 24, 2014, in which he stated that plaintiff had been injured in an automobile accident on January 14, 2012, and had "provided all of her medical providers with her health insurance information, and requested that they file the proper claims timely with BlueCross BlueShield." AR 0287. Because the "medical providers failed to do so," plaintiff's attorney said plaintiff had sought his assistance "in an attempt to recover some of the medical expenses that [plaintiff] has now paid out of pocket." *Id.* Plaintiff's counsel then listed plaintiff's medical providers, the amount of their bills, an itemized statement from each provider with the codes required to file insurance claims on plaintiff's behalf and requested that defendant contact him to discuss the matter.

By letter dated March 19, 2014, defendant responded to plaintiff's attorney, notifying plaintiff of its right of reimbursement and/or subrogation under the benefit plan. It asked for verification of any amounts plaintiff had received as an award or settlement for her medical expenses resulting from her accident. Neither plaintiff nor her counsel responded to that letter or to a letter sent the next month, in which defendant requested claim information for its files. The Record reflects that defendant unsuccessfully attempted to contact plaintiff's counsel by telephone from April through October, 2014. Plaintiff's counsel eventually responded to a letter defendant faxed him regarding its potential right of subrogation. He faxed defendant a note stating: "This is <u>not</u> a subrogation claim and we have notified you of that in <u>writing</u> repeatedly. We are attempting to get you to <u>pay</u> Ms. Gammon's bills, <u>not</u> requesting subrogation information." AR 0359. The Record reflects

defendant then attempted to contact plaintiff directly by telephone from November 2014 through March 2015, but its calls went unanswered.

Defendant proceeded to consider the claims plaintiff's counsel listed in his February 24, 2014, letter, except for the few it had already received and processed.[9] AR 0252-0284. It denied them on the ground the charges were submitted after the claim filing deadline. *Id.* Plaintiff did not appeal that decision as permitted by the benefit plan. She filed this action on October 6, 2016.

Standard of Review

As the Scheduling Order reflects, the parties acknowledge that the case is governed by ERISA. *See* Doc. #11. Plaintiff also states in her motion for judgment that she seeks to "recover health insurance benefits due to her under the terms of her health insurance plan with Defendant HCSC under 29 U.S.C.A. § 1132(a)(1)(B)." Doc. #14, pp. 1, 6. To the extent that plaintiff may still be attempting to pursue some state law claims,[10] they are completely preempted by ERISA. *See* Salzer v. SSM Health Care of Oklahoma Inc., 762 F.3d 1130, 1134-35 (10th Cir. 2014).

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989) sets forth the applicable standard of review in cases in which a plaintiff contests a benefit determination under an

---

[9] *Defendant states in its brief that it processed the charges even though the February letter from plaintiff's attorney did not meet the benefit plan's requirements for a "Properly Filed Claim." See AR 0104.*

[10] *In her motion for judgment, plaintiff states that defendant has "failed to deal fairly and in good faith" with her and that she has "suffered economic loss." Doc. #14, p. 7.*

ERISA plan. "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115. If the ERISA plan "'gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, [the court] review[s] the administrator's decision for an abuse of discretion.'" Holcomb v. Unum Life Ins. Co. of Am., 578 F.3d 1187, 1192 (10th Cir. 2009) (quoting Fought v. UNUM Life Ins. Co. of Am., 379 F.3d 997, 1002–03 (10th Cir.2004)). The court's review under the abuse of discretion, or arbitrary and capricious, standard is limited, "... asking only whether the interpretation of the plan 'was reasonable and made in good faith.'"[11] Weber v. GE Group Life Assur. Co., 541 F.3d 1002, 1010 (10th Cir.2008) (quoting Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co., 491 F.3d 1180, 1189 (10th Cir.2007)).

Here, because the benefit plan gives defendant discretionary authority to construe its terms and determine eligibility for benefits, AR 0027, the court reviews defendant's claims decisions for abuse of discretion. However, because defendant operated under an inherent conflict of interest as both the insurer and decisionmaker (claims administrator) for the benefit plan, the court "weigh[s] the conflict of interest as a facto[r] in determining

---

[11] *The Tenth Circuit "treat[s] the terms 'arbitrary and capricious' and 'abuse of discretion' as interchangeable in this context."* Weber, *541 F.3d at 1010 n. 10 (internal quotations omitted).*

7

whether there is an abuse of discretion."[12] Holcomb, 578 F.3d at 1192 (internal quotation marks omitted).[13]

"[W]hen reviewing a plan administrator's decision to deny benefits, [the court] consider[s] only the rationale asserted by the plan administrator in the administrative record." Weber, 541 F.3d at 1011 (quoting Flinders, 491 F.3d at 1190). Because the determination is based on the language of the benefit plan, the court scrutinize[s] the "plan documents as a whole and, if unambiguous, construe[s] them as a matter of law." *Id.* (internal quotation marks omitted).

## Discussion

Plaintiff does not contend that the terms of the benefit plan are ambiguous or that defendant misinterpreted or misapplied them. What she argues is that she "properly provided her insurance information to all of her providers at the time services were rendered." Doc. #14, p. 6. However, the benefit plan explicitly requires that the participant's "Properly Filed Claim must be furnished to the Plan." AR 0096. Plaintiff's attorney admitted in the letter he sent defendant on February 24, 2014, that her medical providers failed "to file the proper claims timely with BlueCross Blue Shield." AR 0287.

---

[12] *Plaintiff did not discuss the standard of review in her brief or the impact, if any, of the inherent conflict of interest.*

[13] *As the court would have reached the same decision here, regardless of the standard of review – de novo or arbitrary and capricious, it does not have to determine how much weight to give the conflict.*

Plaintiff does make the statement in her motion that defendant "was given timely and proper notice of her claims." Doc. #14, p. 6. The evidence she cites, -- claim forms and EOBs – fails, though, to substantiate her assertion.[14] The Record simply does not reflect that defendant was given any notice before March 31, 2013, of the claims it denied, much less the notice and "Properly Filed Claims" that are required by the benefit plan. *See* AR 0096.

Plaintiff's other argument – that she was unaware of any filing deadline and was not provided a benefit booklet by defendant prior to this lawsuit – is similarly unavailing. While Plaintiff cites no authority in support of her position, defendant has shown that it was not obligated to furnish plaintiff with a copy of the benefit plan description. ERISA requires the benefit plan administrator, in this case plaintiff's employer, Edwin Center, to fulfill that duty. *See* 29 U.S.C. § 1024(b)(1)(A); Holmes v. Colorado Coal. for Homeless Long Term Disability Plan, 762 F.3d 1195, 1199 (10th Cir. 2014) ("ERISA requires plan administrators to provide participants with a 'summary plan description,' which must reasonably apprise participants of their rights and obligations under the plan."), *cert. denied*, 135 S.Ct. 1402 (2015). And the benefit plan itself also specifically states that the "Employer further agrees that it is solely responsible for providing each employee access" to the most current version of the Certificate of Benefits. AR 0013.

---

[14] *Plaintiff refers to Claim Forms, AR 0164-0202, which reflect the dates plaintiff received medical services, but not the dates defendant received the forms, and EOBs defendant sent plaintiff, AR 0203-0286, which support defendant's position that the claims forms were submitted after the filing deadline set by the benefit plan.*

9

Plaintiff offers no other reason why she is entitled to recover "a judgment against Defendant for payment of her medical bills." Doc. #14, p. 6. Unfortunately, plaintiff apparently relied on her medical providers to forward her claims to defendant for payment. Why they failed to do so – whether because they were not "participating providers"[15] or for some other reason -- is unclear. What is clear is that plaintiff did not comply with the unambiguous provisions of the benefit plan, which required that she furnish defendant with "Properly Filed Claims" by March 31, 2013, or sue it no later than March 31, 2016. She did neither, even though she should have been put on notice of some problem with the payment process because the Record reflects that defendant sent her EOBs regarding other claims generated during the same time period which had been filed and which it had paid.

Based on the Administrative Record, the court concludes defendant did not abuse its discretion when it denied plaintiff's claims for medical benefits under the ERISA plan for being untimely. Accordingly, plaintiff's motion for judgment [Doc. #14] is denied and defendant's motion for judgment [Doc. #16] is granted.

**IT IS SO ORDERED**

Dated this 23rd day of June, 2017.

*[signature]*
JOE HEATON
CHIEF U.S. DISTRICT JUDGE

---

[15] *See supra* note 5.